

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed July 15, 2016

_____
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TODD ANTHONY GRETHER, | § | CASE NO. 15-34192-SGJ-7 |
| | § | (Chapter 7) |
| DEBTOR. | § | |

### MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO RECONSIDER ORDER DENYING APPROVAL OF REAFFIRMATION AGREEMENT

On June 8, 2016, Todd Anthony Grether (the "Debtor") filed a Motion for Reconsideration (the "Motion for Reconsideration") [DE # 112].[1]  The Motion for Reconsideration relates to an Order Denying Reaffirmation entered by this court on June 7, 2016 (the "Reaffirmation Denial Order"), which specifically denied approval of a Reaffirmation Agreement between the Debtor and Ally Financial on a 2008 Jaguar vehicle (the "Reaffirmation

---
[1] Note that references to "DE # __" throughout this Opinion refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Clerk in the above-referenced bankruptcy case.

Agreement") [DE # 52].[2]  The court construes the Motion for Reconsideration to be a motion for rehearing/new trial or to alter or amend the ruling, pursuant to Fed. R. Bankr. Proc. 9023 and Fed. R. Civ. Pro. 59, of the court's Reaffirmation Denial Order.

In the Motion for Reconsideration, the Debtor argues that this court used an inappropriate standard in determining whether the Reaffirmation Agreement should be approved.  The court, upon reviewing the record and transcript, has concluded the proper legal standard was applied and the facts did not support approval of the Reaffirmation Agreement on the Debtor's 8-year-old Jaguar vehicle (the "Jaguar").  Thus, the Motion for Reconsideration is herein denied.  In further explaining this decision, an overview of the facts seems appropriate.

**I.    The Facts.**

The Debtor filed the above-referenced bankruptcy case (the "Bankruptcy Case") on October 15, 2015.  The Bankruptcy Case was originally filed as a chapter 13 case, but was converted to a chapter 7 case on November 10, 2015.  After conversion, the Debtor filed his conversion schedules and on Schedule B listed two vehicles, the Jaguar, valued at $21,000, and a 2008 Mercedes (indicating it was his non-filing spouse's vehicle) valued at $20,000.[3]   In addition, Schedule D listed $21,000 owing to Ally Financial relating to the Jaguar and $20,000 owing to Chase Auto Finance with regard to the 2008 Mercedes.[4]

On January 8, 2016, the Debtor filed the Reaffirmation Agreement.  The terms of the agreement between the Debtor and Ally Financial as set forth on the Reaffirmation Agreement

---

[2] The court would note that a hearing on the Reaffirmation Agreement was held on February 11, 2016.  However, counsel for the Debtor did not upload an order denying approval of the Reaffirmation Agreement (as requested by the court) until sometime in early June 2016.

[3] *See* DE # 39.  This was consistent with the Debtor's amended schedule B which was filed on January 25, 2016.  *See* DE # 65.

[4] *Id.*

were as follows: (1) the Debtor was seeking to reaffirm $20,948.48 owing to Ally Financial relating to the Jaguar at a fixed rate of 6.95%; (2) the Debtor's would pay $378.81 per month for 65 months; and (3) the Debtor would be required to make a cure payment of $189.41 on December 7, 2015 and another cure payment of $189.40 on January 7, 2016 (seeming to indicate that the Debtor was not current with his payments on the Jaguar).[5] The Reaffirmation Agreement stated, at Part I, Questions 6a-6d, that the Debtor's combined monthly income from Schedule I was $3,000 per month and his combined monthly expenses were $10,899 resulting in a negative net income of -$7,899. However, the Debtor stated at Questions 6e-6h that his monthly income at the time of the Reaffirmation Agreement was $7,000 and his monthly expenses were still $10,899, resulting in a negative net income of only -$3,899. The Reaffirmation Agreement was signed by both the Debtor and Debtor's counsel and the "Presumption of Undue Hardship" box was checked. As a result of the negative net income being reported and a checking of the "Presumption of Undue Hardship" box, this court, per its normal protocol, set a hearing on the Reaffirmation Agreement.

The court held a hearing to consider approval of the Reaffirmation Agreement on February 11, 2016 (the "Hearing").[6] At the Hearing, the Debtor testified that he wanted to reaffirm the debt on the Jaguar because he needed the vehicle for work purposes and that it was his only vehicle.[7] The Debtor testified that the gap between his income and expenses was narrowing as he was making more income working as an assistant for an insurance agent and that

---

[5] *See* DE # 52.

[6] Note that the court will cite to the audio recording from the hearing held on February 11, 2016 in referring to testimony presented by the Debtor in the following manner: FTR, 2/11/2016 at __:__:__.

[7] FTR, 2/11/2016 at 9:44:02-9:44:25.

3

he believed he could make the payments required under the Reaffirmation Agreement.[8] The Debtor also testified that, prior to filing for bankruptcy, he was in the car business and owned a vehicle dealership, but since filing for bankruptcy, he had completely abandoned that business.[9] Finally, the Debtor testified that, despite the gap between his income and expenses, he believed that he could make the payments required under the Reaffirmation Agreement and that the payments on the Jaguar were current.[10]

Upon hearing this testimony, this court asked some additional questions of the Debtor and received the following testimony: (1) the Debtor purchased the Jaguar sometime in September 2015 (*i.e.*, a few weeks prior to filing for bankruptcy on October 15, 2015); (2) the Debtor was currently earning approximately $750/week at his new insurance job and also received an additional $3000 per month from an annuity he owned resulting in a monthly income of $6,000 per month;[11] and (3) his expenses were still $10,899/month but he was making efforts to cut his expenses down (including downsizing to a smaller home[12] and/or refinancing or selling a rental property that he owned.)[13]

After hearing all the testimony, the court recapped the totality of the evidence as follows: (1) the Debtor purchased the Jaguar one month before the Debtor filed bankruptcy; (2) per the

---

[8] FTR, 2/11/2016 at 9:44:50-9:45:17.

[9] FTR, 2/11/2016 at 9:45:18-9:45:35.

[10] FTR, 2/11/2016 at 9:45:54-9:46:13. This seems somewhat contradictory to what was reported on the Reaffirmation Agreement. Specifically, the Reaffirmation Agreement provided for two cure payments.

[11] This was significantly less than the current monthly income reported on the Reaffirmation Agreement, which stated the Debtor was earning $7,000 per month.

[12] Note, the Debtor was not currently living in this home; his wife with whom he has separated currently resides there. *See* FTR, 2/11/2016 at 9:50:36-9:51:08.

[13] FTR, 2/11/2016 at 9:46:48-9:51:34.

Debtor's submissions to the court, the Jaguar had a current market value of **$20,125** and the debt proposed to be reaffirmed was slightly larger than that amount at **$20,948**; and (3) the Debtor's original schedules showed that his monthly expenses exceeded his monthly income by $7,899 and the most recent figures show his expenses exceed his monthly income by $3,899.[14]  Based upon this evidence, the court found that it could not approve the Reaffirmation Agreement. Specifically, the court held that "not only have you not shown a change in circumstances such that the hardship presumption is overcome, but let me be blunt, this is downright offensive, buying a luxury vehicle one month before filing bankruptcy so that you can discharge potentially hundreds of thousands of dollars of debt."[15]

As previously stated, the Debtor has argued in its Motion for Reconsideration that the court used an inappropriate standard when it denied approval of the Reaffirmation Agreement. Accordingly, to evaluate this contention, the court provides a brief overview on the rules and procedures on reaffirmation agreements.

## II.    The Rules on Reaffirmation Agreements.

Sections 524(c), (d), and (m) of the Bankruptcy Code and Bankruptcy Rules 4004(c)(1)(J), (K) and (c)(2), and 4008 are the Bankruptcy Code sections and Bankruptcy Rules germane to reaffirmation agreements.  Any reaffirmation agreement that does not meet the strict requirements of these provisions is unenforceable. These provisions "grew out of a long history of coercive and deceptive actions by creditors to secure reaffirmation of discharged debt."[16]

---

[14] FTR, 2/11/2016 at 9:52:01-9:53:02.

[15] FTR, 2/11/2016 at 9:53:02-9:53:50.

[16] *In re Grisham*, 436 B.R. 896, 900 (Bankr. N.D. Tex. 2010) (citing to 4 Collier on Bankruptcy ¶ 524.04, pp. 524–40 (16th ed. 2009)).

5

In considering any reaffirmation agreement, the bankruptcy court, first, must consult Bankruptcy Code Section 524(c)(1), which provides that a reaffirmation agreement is only "enforceable" if "such agreement was made before the granting of the discharge."[17] Here, the Reaffirmation Agreement was executed by the Debtor on January 4, 2016, and it was executed by Ally Financial on January 8, 2016. Thus, the agreement was "made" as of January 8, 2016. Here, the Debtor had not received a discharge as of the time that the agreement was "made." So, initially, the court finds that the Reaffirmation Agreement under Section 524(c)(1) was timely "made."[18]

There are at least a couple of reasons that a bankruptcy court may require a hearing on a reaffirmation agreement, but the one reason germane to the facts of this case is that there was a "presumption of undue hardship." Specifically, there is a section in the form cover sheet of the reaffirmation agreement (Part I, Question 6 of Official Form B427, effective December 1, 2015), and again in the actual form of reaffirmation agreement (Part II, Question 3 of Official Form B2400A), for a debtor to list all of his monthly income and then all of his monthly expenses. The form requires the debtor list both the income and expenses as set forth in his or her Bankruptcy Schedules I & J, as well as his or her *present* income and expenses as set forth in the reaffirmation agreement. The forms require that the debtor set forth separately the amount of the reaffirmed debt. The difference between the debtor's income and these expenses (including the reaffirmed debt) will be considered the debtor's present net monthly income. If this number is

---

[17] *See* 11 U.S.C.A. § 524(c)(1) (West, Westlaw through P.L. 114-165).

[18] *Id.*

negative, then the so-called "presumption of undue hardship" is triggered, and there is a box on the reaffirmation agreement form that should be checked.[19]

Moreover, where the undue hardship presumption has been triggered, section 524(m)(1) of the Bankruptcy Code and Bankruptcy Rule 4004(c)(1)(K) should be consulted to understand the timing concerns that underlie setting a hearing on a reaffirmation agreement.  Section 524(m)(1) of the Bankruptcy Code provides that any hearing in which the court is going to consider approval/disapproval of a reaffirmation agreement, where the undue hardship presumption has been triggered, "shall be concluded before the entry of the debtor's discharge."[20] But the timing issues are slightly more complicated than simply holding the hearing before the discharge order is potentially entered.  Specifically, section 524(m)(1) of the Bankruptcy Code contemplates that whenever the math is negative (*i.e.*, whenever the debtor's monthly income less the debtor's monthly expenses, including the reaffirmed debt), there shall be a presumption of undue hardship, but there is actually a finite time frame for this presumption to remain in effect.  The presumption remains in effect for 60 days after the agreement is filed "(or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period)."[21]  Additionally, Section 524(m)(1) requires that the presumption "shall be reviewed by the court."[22]  Moreover, the debtor may attempt in the reaffirmation agreement to rebut the presumption with a written statement explaining additional sources of

---

[19] *Grisham*, 436 B.R. at 903-904.  *See also* 11 U.S.C.A § 524(m) (2010) (West, Westlaw through P.L. 114-165) ("... it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement ... is less than the scheduled payment on the reaffirmed debt . . . ).

[20] *See* 11 U.S.C.A § 524(m)(1) (West, Westlaw through P.L. 114-165).

[21] *Id.*

[22] *Id.*

funds, but if "the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement."[23] Section 524(m)(1) of the Bankruptcy Code finally goes on to add that "[n]o agreement shall be disapproved without notice and a hearing to the debtor and creditor."[24] Read all together, these provisions mean: (a) the court has a statutory obligation to review reaffirmation agreements where a presumption of undue hardship has been triggered; (b) the court needs to engage in its statutory review within 60 days of when the reaffirmation agreement is filed because the presumption expires after 60 days (unless the court, within the 60 days, extends that time frame, with notice and a hearing and for cause); and (c) in theory, the court could be satisfied that the debtor has rebutted, with a good written explanation, the presumption of undue hardship and not set a hearing (and the presumption would expire after 60 days after the filing of the agreement and, presumably, the agreement would be enforceable).[25]

Returning to the case at bar, the proper procedures were all correctly followed. The agreement was "made" timely. It was "filed" timely. The attorney candidly and correctly checked the "presumption of undue hardship" box because of the negative math. Thus, the red flag went up in the clerk's office, halting the entry of a discharge, pursuant to Bankruptcy Rule 4004(c)(1)(K), so that the court could timely undertake its statutorily required review of the reaffirmation agreement. The court set a hearing and concluded the hearing before a discharge order had been entered, ultimately finding that the presumption of undue hardship had not been overcome and denied approval of the Reaffirmation Agreement.[26]

---

[23] *Id.*

[24] *Id.*

[25] *Grisham,* 436 B.R. at 904-05.

[26] Even though the presumption of undue hardship expires after a period of sixty (60) days from the date the reaffirmation agreement was filed pursuant to section 524(m)(1) of the Bankruptcy Code, the court finds that the presumption of undue hardship was still present in this case even though the Reaffirmation Denial Order was

**III.     The Motion for Reconsideration.**

Despite following all the prescribed rules and protocols under the Bankruptcy Code and the Bankruptcy Rules, the Debtor has nevertheless argued, in the Motion for Reconsideration, that the court inappropriately denied approval of the Reaffirmation Agreement because it failed to use the proper standard in evaluating the Reaffirmation Agreement at the Hearing. Specifically, the Debtor has argued that the court appeared to focus more on the Debtor's "bad faith" rather than if the Reaffirmation Agreement imposed an undue hardship on the Debtor pursuant to section 524(c)(3)(B) of the Bankruptcy Code. The court can only speculate that it was a specific comment of the court at the Hearing that may have led to this conjecture. Specifically, as noted above, this court, in denying approval of the Reaffirmation Agreement stated that "not *only have you not shown a change in circumstances such that the hardship presumption is overcome*, but let me be blunt, this is downright offensive, buying a luxury vehicle one month before filing bankruptcy so that you can discharge potentially hundreds of thousands of dollars of debt."[27] To be sure, the court had serious concerns about the Debtor's good faith (and good sense) in purchasing a Jaguar almost immediately before filing for bankruptcy. To be sure, the court happened to notice—juxtaposed against this eve-of-bankruptcy purchase—that the Debtor has $1,247,209 of secured debt scheduled, and more than 50 unsecured creditors (most of whose claims are scheduled as "unknown" in amount—some

---

entered more than 60 days after the Reaffirmation Agreement was filed. Specifically, the court ordered counsel to upload an order denying approval of the Reaffirmation Agreement at the hearing held on February 11, 2016. February 11, 2016 fell well within the 60-day window contemplated by section 524(m)(1) of the Bankruptcy Code. Even though counsel waited until June 2016 to upload the order, which is more than 60 days after the Reaffirmation Agreement was originally filed, the court finds that the Reaffirmation Agreement was effectively denied on February 11, 2016, and that the presumption of undue hardship continued through the time the Reaffirmation Denial Order was entered by the court on June 7, 2016.

[27] FTR, 2/11/2016 at 9:53:02-9:53:50.

consumer and some business debt)—none of whom are likely to receive a distribution through this bankruptcy case. To be sure, the court was troubled by approving reaffirmation of total debt ($20,948.48) that was more than the current market value of the car ($20,125). To be sure, the court was pondering whether the $200 monthly expense estimate for the Debtors transportation expenses (including gas and car maintenance), could possibly be realistic or reasonable on an 8-year-old foreign car. And, to be sure, the court recognized that the debtor likely needed a car in life and the car payment itself ($378 per month), in isolation, doesn't sound that offensive (although paying this much for an 8-year-old foreign luxury car seems a little different than paying this much for a newer mid-range car). While all these facts most definitely were before this court and would seem silly to ignore, the court specifically held that ***the evidence presented by the Debtor was not adequate to overcome the presumption of undue hardship based upon the difference between the Debtor's income and expenses being almost a negative $4,000,[28] as well as the fact that the amount being reaffirmed is more than the Jaguar is even worth***. Where it is doubtful that a debtor can make the payments called for by a reaffirmation agreement and the debtor has failed to identify sources of additional funds to make payments required under a reaffirmation agreement, the reaffirmation agreement should normally be disapproved.[29] Here,

---

[28] While this Memorandum Opinion and Order addresses the approval or disapproval of a reaffirmation agreement, the court would note that a significant improvement in a debtor's monthly income between the petition date and the date a reaffirmation agreement is filed could open the door for subsequent motions including a motion to dismiss or convert pursuant to section 707(b)(1) of the Bankruptcy Code—specifically where a debtor's increase in income could potentially fund a chapter 13 repayment plan. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 458 (5th Cir. 2006) (involving a chapter 7 debtor that was unemployed at the time of filing a chapter 7 case, and had been for several months at the time of filing, but then obtained new employment four days after filing; the question was whether postpetition events of this sort should matter in determining whether a debtor should be able to obtain a discharge in chapter 7—or, rather, such circumstances should dictate conversion to chapter 13 or dismissal; the Fifth Circuit held that such postpetition events should be considered up until the date of discharge).

[29] *See, e.g., In re Melendez*, 224 B.R. 252, 261 (Bankr. D. Mass. 1998) (bankruptcy court found that a reaffirmation agreement would cause a debtor "undue hardship" where it would result in a significant, but otherwise avoidable, obstacle to the attainment or retention of necessaries by the debtor or the debtor's dependents); *In re Sawyer*, No. 08-11022, 2009 WL 537556, at *2 (Bankr. D.R.I. Feb. 24, 2009) (held that the totality of the circumstances including insufficient cash to service the reaffirmation agreement, the unfavorable interest rate, and the fact that the vehicle

based upon the Debtor's current income and expenses, he simply cannot afford this vehicle. As it did at the Hearing, the court cannot find that the presumption of undue hardship has been overcome in this situation, so the Reaffirmation Agreement should be disapproved.[30]

Accordingly, it is:

**ORDERED** that the Motion for Reconsideration is hereby **DENIED**.

#### END OF MEMORANDUM OPINION AND ORDER ####

---

was worth $10,000 less than the amount sought to be reaffirmed demonstrated that the reaffirmation agreement was an undue financial hardship for the debtor); *In re Visnicky*, 401 B.R. 61, 64-65 (Bankr. D. R.I. 2009) (debtor failed to overcome the presumption where there was a $3,000 shortfall of scheduled expenses over income and debtor's mother's promise to pay the debt was not documented); *In re Byers*, No. 08-0228, 2009 WL 427339, at *1-2 (Bankr. N.D. Iowa Feb. 11, 2009) (debtor could not overcome the presumption of undue hardship by telling the court that the debtor was doing better since filing for bankruptcy and could afford to pay the debt).

[30] While the court cannot approve the Reaffirmation Agreement, the Debtor could arguably still keep the Jaguar without fear of repossession if he continues to make his regular, monthly car payments to Ally Financial. *See* 11 U.S.C.A § 521(a)(6) and (d) (West, Westlaw through P.L. 114-165) & 11 U.S.C.A 362(h)(1)(A) and (j) (West, Westlaw through P.L. 114-165). *See also Grisham*, 436 B.R. at 907 (citing to *Ford Motor Credit Co. v. Baker (In re Baker)*, 400 B.R. 136, 139 (D. Del. 2009)).